IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIK D. ANDREWS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT W. SEALES, | : | No. 11-CV-1967 |
| Defendant. | : | |

**MEMORANDUM OPINION**

**TIMOTHY R. RICE**                                                                                          **July 18, 2012**
**U.S. MAGISTRATE JUDGE**

Plaintiff Erik D. Andrews sued defendant Scott W. Seales, a former National Park Service ranger, alleging constitutional violations arising from actions Seales took while arresting Andrews in Independence National Historical Park in September 2009. See generally 1st Am. Compl., Andrews v. Tunis, No. 11-1967 (E.D. Pa. July 7, 2011) [hereinafter Am. Compl.].[1] Specifically, Andrews claims Seales violated his First, Fourth, and Fifth Amendment rights when Seales used a TASER device and then pushed Andrews' head against a cobblestone street while placing Andrews in handcuffs. Id. Seales seeks summary judgment. See Def.'s Mot. Summ. J., Andrews v. Seales, No. 11-1967 (E.D. Pa. June 29, 2012); Mem. Law Supp. Def.'s Mot. Summ. J., Andrews v. Seales, No. 11-1967 (E.D. Pa. June 29, 2012) [hereinafter Def.'s Br.]. For the reasons that follow, Seales' motion is granted as to Andrews' First and Fifth Amendment claims, as well as his Fourth Amendment claim to the extent it challenges Seales' use of his TASER.

Even assuming Andrews' description of the relevant events is accurate, no reasonable

---

[1] Andrews also sued another ranger, James Tunis, who was Seales' partner on the night of Andrews' arrest. See Am. Compl. at 1. After discovery, however, Andrews voluntarily dismissed his claims against Tunis. See Stipulation at 1, Andrews v. Tunis, No. 11-1967 (E.D. Pa. June 28, 2012).

jury could conclude Seales' use of his TASER was objectively unreasonable under the circumstances he confronted.  Seales is entitled to qualified immunity with respect to his use of the TASER in any event.  Additionally, Andrews' First and Fifth Amendment claims amount to unsuccessful efforts to reformulate his Fourth Amendment claim into additional allegations of constitutional harm.  Andrews, however, has raised a genuine factual dispute as to whether Seales' actions after he fired his TASER rose to the level of excessive force.  That portion of Andrews' Fourth Amendment claim will proceed to trial.

I.      BACKGROUND[2]

On September 12, 2009, Andrews and a friend watched the end of a baseball game at the City Tavern near Second and Walnut Streets in Philadelphia.  Andrews Dep. at 21-23.[3]  The two men left the bar after dark, and Andrews, who was unfamiliar with the neighborhood, followed his friend, intending to locate a bus or train that would take him home.  Id. at 23-24, 36.  While walking down Dock Street, Andrews and his friend were stopped by Seales and Tunis, who were charged with investigating two individuals causing a disturbance in the area.  Id. at 31, 37-38; see also Statement Undisputed Material Facts at ¶ 6, Andrews v. Seales, No. 11-1967 (E.D. Pa. June 29, 2012) [hereinafter Def.'s SUMF]; Pl.'s Resp. Def.'s Statement Undisputed Material Facts at ¶ 6, Andrews v. Seales, No. 11-1967 (E.D. Pa. July 10, 2012) [hereinafter Pl.'s SUMF].

Andrews concedes the stop was lawful.  See Pl.'s SUMF at 1 ("The initial cause for the stop of [Andrews] by [Seales] is not in dispute.").

Andrews and his friend both provided identification to the rangers.  Andrews Dep. at 51.

---

[2] For purposes of Seales' motion, I have viewed all facts in the light most favorable to Andrews.  See Ray v. Warren, 626 F.3d 170, 173 (3d Cir. 2010).

[3] A complete transcript of Andrews' deposition is attached to Seales' brief as Exhibit 1.

While Seales contacted a dispatcher to ascertain whether either man was the subject of any warrants, Andrews was cooperative and waited with his friend on a nearby bench.  Def.'s SUMF at ¶¶ 11, 15; Pl.'s SUMF at ¶¶ 11, 15.  After learning Andrews was wanted for a probation violation and unpaid parking tickets, and that the Philadelphia Warrant Division wanted the rangers to take him into custody, Seales informed Andrews there was a warrant for his arrest.  Andrews Dep. at 33, 57; Def.'s SUMF at ¶¶ 12-14, 17-18, 20; Pl.'s SUMF at ¶¶ 12-14, 17-18, 20.  Seales also ordered Andrews not to move.  Andrews Dep. at 33, 57-59.

Andrews admits he disregarded Seales' order and, instead, began to back away from Seales, stating he was returning to the City Tavern and asking Seales to follow him.  Id. at 33, 57, 60.  Then, Andrews turned away from Seales and began to "walk real fast in a real haste" down the street.  Id. at 33; see also id. at 63 (stating he moved "in a haste . . . in a fast haste, like fast motion"); id. at 67 (agreeing he had been "in a run" before he felt the TASER hit).  In response, Seales shot Andrews with his TASER.  Def.'s SUMF at ¶ 38; Pl.'s SUMF at ¶ 38.  Andrews fell to the ground and struck his face on the cobblestone street.  Andrews Dep. at 66-68.

From that point on, the parties' versions of events diverge.  For purposes of this motion, I will recount the remaining facts as they have been described by Andrews.  See Ray, 626 F.3d at 173.  Andrews testified he saw a flash, was stunned for a few seconds, and then tried to raise his head to look around.  Andrews Dep. at 69.  He asked Seales, who was standing over him, what happened; Seales told him to "shut up."  Id. at 69-70.  Andrews felt Seales kneel on his back and "slam" his face into the ground twice before placing Andrews in handcuffs.  Id. at 70-73.  Andrews then had difficulty breathing and passed out, regaining consciousness only after he had arrived at a local hospital.  Id. at 74-76.

Following the Dock Street incident, Andrews was charged with, and convicted of, a federal summary offense for "threatening or interfering with a government function." Def.'s SUMF at ¶¶ 50-51; Pl.'s SUMF at ¶¶ 50-51. That conviction, which Andrews has not appealed, was "[b]ased on his flight from arrest" during the incident at issue here. Def.'s SUMF at ¶ 50; Pl.'s SUMF at ¶ 50.

## II.   SUMMARY JUDGMENT STANDARD

Entry of summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must "view the facts and draw inferences in the light most favorable to the nonmoving party." Ray, 626 F.3d at 173. A genuine dispute as to a material fact exists when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (citations omitted).

"When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote and citations omitted); see also Wellman v. DuPont Dow Elastomers, L.L.C., 739 F. Supp. 2d 665 (D. Del. 2010) ("The mere existence of some evidence in support of the nonmoving party . . . will not be sufficient for denial of a motion for summary judgment;

4

there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.").

Applying these standards to the record before me, Seales is entitled to judgment as a matter of law with respect to Andrews' First and Fifth Amendment claims, as well as his excessive force claim arising from Seales' use of his TASER. However, genuine issues of fact preclude entry of judgment on the excessive force claim stemming from Seales' actions while subsequently handcuffing Andrews.

### III.     ANALYSIS

#### A.     Excessive Force: Use of TASER

Andrews alleges Seales' decision to use his TASER violated the Fourth Amendment. See Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 6-11, Andrews v. Seales, No. 11-1967 (E.D. Pa. July 10, 2012) [hereinafter Pl.'s Br.]. Seales first argues his decision to fire his TASER in order to stop Andrews, who was fleeing from a lawful arrest, was objectively reasonable and, therefore, constitutional. Def.'s Br. at 18-24. Alternatively, Seales contends he is entitled to qualified immunity because his actions did not violate a clearly established constitutional rule regarding use of TASERs. Id. at 24-29. I agree with Seales on both counts.

In a case alleging a police officer's use of force violated the Fourth Amendment, the ultimate question is whether the use of force was "'objectively reasonable' in light of the facts and circumstances confronting" the officer at the time. Graham v. Connor, 490 U.S. 386, 397 (1989). The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it." Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. This standard makes

"allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97.

When assessing the reasonableness of the amount of force used, courts consider various factors related to the specific circumstances presented, including the following: (1) the severity of the crime; (2) whether the suspect posed an imminent threat to the safety of the officer or others; (3) whether the suspect actively resisted or attempted to evade arrest; (4) whether the force used was of such an extent as to lead to injury; (5) the possibility that the suspect was violent or dangerous; (6) the duration of the officer's action; (7) whether the action took place in the context of making an arrest; (8) the possibility that the suspect was armed; and (9) the number of persons with whom the officer had to contend at the time. See Hrezik v. Moyer, No. 10-4251, 2012 WL 162334, at *6 (E.D. Pa. Jan. 19, 2012) (citing Graham, 490 U.S. at 396, and Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997)).

Here, the uncontested facts foreclose a finding that Seales' use of his TASER violated Andrews' Fourth Amendment rights. The following material concessions by Andrews mandate this conclusion: Seales' initial stop of Andrews and his friend was lawful; Andrews voluntarily provided his identification to Seales; Seales was advised there were outstanding warrants for Andrews' arrest at the time of the stop; Seales informed Andrews he was wanted and ordered him not to move; Andrews disregarded Seales' order and began to back away from him; Andrews then turned and began to move "with haste" away from Seales; and Andrews was found guilty of a federal summary offense "[b]ased on his flight from arrest." See Def.'s SUMF at ¶¶ 10, 12-14, 17, 20, 29-31, 50-51; Pl.'s SUMF at 1, ¶¶ 10, 12-14, 17, 20, 29-31, 50-51; Andrews Dep. at 63-64.

In light of these undisputed facts, at least five of the factors listed above weigh heavily in Seales' favor. Seales used the TASER in the context of making an arrest, the lawfulness of which is not in dispute. Moreover, Andrews admittedly hastened away from Seales when he tried to effect the arrest, and was later found guilty of an offense based on that flight.[4] At the time of Andrews' flight, two rangers were investigating two men, leaving Seales on his own to contend with Andrews while his partner dealt with Andrews' friend. Seales fired his TASER only once, so the duration of the action was short. Finally, although Andrews was injured as a result of the use of force, there is no reason to believe use of a TASER created a greater risk of injury than any other means Seales could have chosen to end Andrews' flight (e.g., chasing and tackling Andrews on the same cobblestone street).[5] See Def.'s Br. at Ex. 6, pp.12-13.

The remaining four factors are neutral here. Seales was not aware of the nature of the prior conviction or the probation violation leading to Andrews' warrant. He also had no information about whether Andrews was violent or armed, or whether he presented a unique

---

[4] To the extent Andrews claims he was not attempting to flee or evade arrest, such claims are barred by his conviction of interfering with a government function, which he admits was based on his flight. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (precluding claims that would render a conviction invalid).

[5] Moreover, many courts have upheld the use of TASERs and other similar devices on individuals fleeing or resisting arrest. See Woods v. Grant, 381 F. App'x 144, 145 (3d Cir. 2010) (TASER used against subject of arrest warrant who did not comply with order to lay on ground and moved toward officer instead); see also McKenney v. Harrison, 635 F.3d 354, 359-60 (8th Cir. 2011) (stun gun used against subject of misdemeanor arrest warrants who made gesture indicating intent to flee); Crowell v. Kirkpatrick, 400 F. App'x 592 (2d Cir. 2010) (stun gun used against protestors who had chained themselves to large barrels to prevent arrest for trespass).

Regulations governing use of force by National Park Service rangers also permit use of TASERs against "individuals who are actively resisting a commissioned employee," and permit use of non-deadly force "to effect an arrest . . . when lesser force is or would be insufficient." See Def.'s Br. at Ex. 8.

safety threat, beyond the danger that arises anytime a suspect flees on city streets where other people may be present. Weighing all of the factors, no reasonable jury could conclude Seales' use of his TASER in response to Andrews' flight was objectively unreasonable.

Even if I were to conclude the evidence could support a finding that Seales violated Andrews' Fourth Amendment rights by using a TASER to effect his arrest, the doctrine of qualified immunity would shield Seales from civil damages liability. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity is an entitlement not to stand trial, not a defense from liability. Saucier v. Katz, 533 U.S. 194, 201 (2001). It protects law enforcement officers "'from undue interference with their duties and from potentially disabling threats of liability," if their conduct did not violate clearly established statutory or constitutional law of which a reasonable person would have been aware. Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982); accord Elder v. Holloway, 510 U.S. 510, 514 (1994); Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). Thus, the qualified immunity doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Qualified immunity is a question of law, Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004), and it should be resolved by the court before trial, see Mitchell v. Forsythe, 471 U.S. 511, 526 (1985). I must decide: (1) whether the facts, taken in a light most favorable to the plaintiff, establish a constitutional violation; and (2) whether the right at issue was clearly established, i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 201-02; see Pearson v. Callahan, 555 U.S. 223, 236 (2009) (courts may consider the two questions in either order). A right is "clearly established" if there is "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to

put defendant on notice that his . . . conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001); accord McKee v. Hart, 436 F.3d 165, 171 (3d Cir. 2006). "If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful." Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002).

The constitutional question at issue here is whether Seales used excessive force when he fired his TASER after Andrews began to flee upon learning of the arrest warrant. For the following reasons, I conclude a reasonable officer in Seales' position would have believed his actions were lawful, even if a fact-finder were to conclude Andrews established a constitutional violation.

As of September 12, 2009, there were no decisions by the United States Supreme Court or the United States Court of Appeals for the Third Circuit delineating when the use of TASERs or other similar devices during an arrest would violate the constitution. The only decisions by federal trial courts in the Eastern District of Pennsylvania discussing the use of such devices were unpublished, and most of them involved circumstances entirely distinct from those confronting Seales. See Def.'s Br. at 26 n.22, 27 (citing and describing then-existing trial court decisions). Only one trial court within the Third Circuit had issued a published decision on the Fourth Amendment and the use of a TASER, finding such use was objectively reasonable against a suicidal suspect who had a gun in his pocket and would not obey the arresting officer's commands. See Wargo v. Municipality of Monroeville, 646 F. Supp. 2d 777, 781-82, 785 (W.D. Pa. 2009). To the extent a reasonable person in Seales' position would have been familiar with the decisions of courts in jurisdictions beyond the Third Circuit, such decisions would not have suggested Seales' actions violated any clearly established right. See, e.g., Draper v. Reynolds,

9

369 F.3d 1270, 1278 (11th Cir. 2004) (use of TASER to effect arrest of verbally belligerent suspect during traffic stop was reasonable).

Under these circumstances, Andrews has not demonstrated the constitutional right he claims was violated here was "clearly established" at the time Seales acted.[6] Accordingly, Seales is entitled to qualified immunity with respect to Andrews' Fourth Amendment claim regarding his use of the TASER, even if such use violated Andrews' constitutional right. See Saucier, 533 U.S. at 201-02.

### B.     Excessive Force: Post-TASER Actions

Seales also seeks summary judgment on Andrews' excessive force claim stemming from Seales' actions after he fired his TASER. Genuine disputes about facts that are material to this claim, however, must be resolved by a jury after trial.

Andrews claims that, after Seales used his TASER, Seales became angry, would not answer Andrews' questions, told Andrews to "shut up," and "slammed" Andrews' face into the cobblestone street twice. Andrews Dep. at 69-76. During that time, Andrews states he was no longer fleeing or resisting arrest. Id. According to Andrews, these actions caused further injury to his face and eventually caused him to pass out. Id.

Seales, however, claims Andrews was unresponsive after he was hit by the TASER and fell to the ground. See Reply Br. Supp. Def.'s Mot. Summ. J. at 11 n.12, Andrews v. Seales, No. 11-1967 (E.D. Pa. July 12, 2012) [hereinafter Def.'s Reply]. He testified he secured Andrews using handcuffs and never pushed his face into the ground. Id.

---

[6] Indeed, Andrews admits that, "[w]hile there are numerous court decisions regarding the use of a TASER gun by law enforcement officers, those decisions offer little direction in determining whether the use of a TASER gun, in a particular case, is a reasonable use of force." Pl.'s Br. at 9.

If a jury were to credit Andrews' version of events, it could conclude Seales' use of force against Andrews while he was on the ground and already injured was excessive and violated Andrews' Fourth Amendment rights, even though the initial use of the TASER was reasonable. But if a jury chose to credit Seales -- or if it believed Andrews tried to push himself up to speak to Seales, and that Seales pushed Andrews' head down but did not "slam" it into the ground -- the jury could conclude Seales' post-TASER use of force, if any, was reasonable.

As such, Andrews' excessive force claim warrants a trial insofar as it relates to Seales' actions after he used his TASER.[7]

### C.   First and Fifth Amendment Claims

Finally, Seales asserts Andrews has failed to identify any violation of his First Amendment rights, and that his Fifth Amendment claim merely duplicates his excessive force allegations. See Def.'s Reply at 12-13. I agree.

Andrews' only explication of his First Amendment claim is "that [he] had the right to be where he was, when he was there and to assemble with another person." Pl.'s Br. at 4. His

---

[7] Although Seales argues he is entitled to qualified immunity with respect to this excessive force claim as well, the factual disputes that merit a trial on this claim also prevent me from granting him qualified immunity. If a jury credits Andrews' testimony in its entirety, finding Seales angrily slammed Andrew' head into the cobblestones while Andrews offered no resistance, the qualified immunity doctrine would not shield Seales from civil damages liability. No officer facing those facts would reasonably believe he was justified in engaging in such behavior.
  Seales also seeks dismissal of Andrews' claim for punitive damages. Such damages may be awarded to a plaintiff claiming his constitutional rights were violated by a state actor "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); accord Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996). The same factual disputes that merit a trial with respect to Andrews' excessive force claim arising from Seales' post-TASER actions, also save the related punitive damages claim from summary judgment. However, Andrews' request for punitive damages is dismissed as to all other claims. See § III.A, supra; § III.C, infra.

statement -- while true -- fails to establish any viable claim that Seales' actions violated his First Amendment rights.  The record contains no evidence suggesting Seales took any action against Andrews simply because he was present on Dock Street, or because he was there with his friend.  Moreover, Andrews has not challenged Seales' cause to conduct an investigatory stop, or to make an arrest upon learning of the outstanding warrant.  Accordingly, Andrews' First Amendment claim fails as a matter of law.

Finally, Andrews' Fifth Amendment claim is based on his contentions that National Park Service policies prohibit the use of excessive force, and rests on all of the same facts and arguments Andrews advances in support of his Fourth Amendment claims.  See Pl.'s Br. at 12-14.  The Fifth Amendment claim, therefore, fails with respect to Seales' use of his TASER for the same reasons as his related Fourth Amendment claim.  See § III.A, supra.  To the extent Andrews claims Seales' post-TASER actions violated the Fifth Amendment as well, he merely repeats allegations that are more properly viewed through the lens of the Fourth Amendment's right to be free from excessive force.  As such, I will dismiss Andrew' Fifth Amendment claim in its entirety.

An appropriate order follows.