**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIK D. ANDREWS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT W. SEALES, | : | No. 11-CV-1967 |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

**TIMOTHY R. RICE**                                                    **July 31, 2012**
**U.S. MAGISTRATE JUDGE**

On September 12, 2009, during an investigatory stop in Independence National Historical

Park, Defendant Scott W. Seales -- a National Park Service ranger -- shot Plaintiff Erik D.

Andrews with a TASER device, then arrested him.  Andrews sued Seales, claiming his Fourth

Amendment right to be free from excessive force was violated when Seales allegedly slammed

Andrews' head into a cobblestone street while handcuffing him.[1]  Seales has filed three motions

in limine.[2]  One motion, which seeks to exclude evidence of Seales' prior bad acts, is unopposed

and will be granted.  In the two that remain, Seales seeks: 1) to preclude Andrews from testifying

as to the cause of his facial injuries; and 2) permission to cross-examine Andrews about certain

prior false statements.  For the reasons that follow, I will deny the former and grant, in part, the

latter.

---

[1]      Andrews also sued Seales' partner, James Tunis, but subsequently stipulated his claims
against Tunis should be dismissed.  <u>See</u> Mem. Op. at 1 n.1, <u>Andrews v. Seales</u>, No. 11-1967
(E.D. Pa. July 18, 2012).  I previously granted summary judgment in favor of Seales with respect
to Andrews' First and Fifth Amendment claims, as well as his Fourth Amendment challenge to
Seales' use of his TASER.  <u>See generally</u> <u>id.</u>

[2]      I already have granted a fourth motion in limine.  <u>See</u> Order, <u>Andrews v. Seales</u>, No. 11-
1967 (E.D. Pa. July 24, 2012).

I.      **Motion to Preclude Andrews' Testimony About "Medical Causation"**

Seales concedes that Andrews, as a lay witness, may describe what he perceived

throughout the encounter, including any pain, and when and where he felt it.  See Def.'s Mot.

Preclude Pl. Testifying Medical Causation at ¶¶ 9-10, 15, Andrews v. Seales, No. 11-1967 (E.D.

Pa. July 23, 2012) [hereinafter 701 Mot.]; see also Fed. R. Evid. 701.  Seales, however, urges me

to prevent Andrews from testifying that his injuries occurred not when he was shot with Seales'

TASER and fell, but when Seales pushed his face into the ground again while handcuffing him.

See generally 701 Mot.

Pursuant to Rule 701, Andrews is entitled to describe at trial:

•       where he perceived the impact of his initial fall to the ground;

•       whether he felt pain after falling and, if so, where he felt pain;

•       whether he could breathe, speak, or move his head and face after he fell;

•       whether his face struck the ground again after the initial fall; and

•       whether he felt new or different pain following any post-fall impacts.

Testimony regarding such issues falls squarely within the bounds of Rule 701.  Cf. Stires v.

Cnty. of Cape May, No. 99-5640, 2001 WL 34609517, at *5 (3d Cir. 2001) (concluding a

hostile-work-environment plaintiff could describe physical symptoms she experienced after

exposure to workplace discrimination, but was properly prevented from testifying that serious

physical impairments like ulcers and a heart attack were caused by the discrimination).

The parties agree Andrews was injured during his encounter with Seales.  They have

stipulated as to the nature of Andrews' injuries, but disagree about their cause.  See 701 Mot. at

¶ 3.  Nevertheless, there are only two possible causes of the undisputed injuries: the force of

Andrews' initial fall when he was struck by the TASER device, or the impact when Seales

2

allegedly slammed Andrews' face into the ground thereafter.

If the jury believes Seales, it will find Andrews' head struck the ground only once -- when he was shot with the TASER and fell to the ground.  If the jury believes Andrews and finds Seales slammed his head into the ground again after he fell, the jury will be required to determine which, if any, of Andrews' injuries resulted from Seales' post-TASER actions.  Thus, Andrews' testimony about the location and degree of pain he felt following each impact will be "helpful to . . . the determination of a fact in issue."  Fed. R. Evid. 701.  This assessment -- comparing the locations of Andrews' undisputed injuries with the places Andrews states he felt pain after each impact -- does not require the sort of specialized or scientific knowledge that would trigger Rule 702 and limit Andrews' testimony as Seales suggests.  As such, Seales' motion will be denied.

## II.  Motion to Permit Cross-Examination About Andrews' Previous False Statements

Seales seeks permission to cross-examine Andrews at trial regarding false statements Andrews made about his criminal history on recent applications for employment and state public assistance.  See Def.'s Mot. Limine Permit Cross-Examination Pl.'s Prior False Statements at 1-2, Andrews v. Seales, No. 11-1967 (E.D. Pa. July 23, 2012) [hereinafter 608(b) Mot.].

Federal Rule of Evidence 608 permits cross-examination of any witness about specific acts "concerning the witness' character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  Although such conduct "may not be proved by extrinsic evidence," I have discretion to permit inquiry about the acts "if [they are] probative of truthfulness or untruthfulness."[3]  Id.  In

---

[3]    This standard is not to be confused with Rule 609, which governs impeachment of a witness with evidence of a prior criminal conviction.  Here, Seales seeks to attack Andrews' credibility with evidence he lied on a job application and a state welfare form.  Although the subject of the lies was Andrews' criminal record, Seales does not seek to admit extrinsic

exercising the discretion granted by Rule 608(b), however, I also must consider whether the probative value of the testimony at issue would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.

Two instances of specific conduct are at issue here.  The first is an Employability Re-Assessment Form Andrews submitted to the Pennsylvania Department of Public Welfare ("DPW"), on which Andrews falsely stated he had never been issued a summons to appear as a defendant in criminal court and was never convicted of a misdemeanor offense, ordered to pay fines or costs related to a criminal conviction, or placed on probation.  See 608(b) Mot. at Ex. 3, p.5.  The second is a Security Release Form for L.L. Bean on which Andrews falsely stated he had never been convicted of a crime.  Id. at Ex. 4.  Notwithstanding his statements on these two documents, Andrews admitted during his deposition that he has been convicted of at least three misdemeanors -- two for possessing firearms, and one for driving under the influence ("DUI") -- and that he has been on probation and was ordered to pay court costs following each conviction. See id. at Ex. 2.

Andrews' inaccurate statements about his criminal history on both applications are highly probative of his truthfulness.  Moreover, the resolution of this case will turn largely on Andrews' credibility, as he likely will be the only witness who testifies that Seales used any force at all after Andrews fell.  Accordingly, Rule 608(b) would allow cross-examination about the specific instances of conduct Seales has identified, and I will permit some degree of inquiry regarding Andrews' prior misrepresentations.

Applying the balancing test required by Rule 403, however, I find the probative value of

---

evidence of Andrews' prior convictions, nor could he.  See 608(b) Mot. at 5 n.2.  As such, Rule 609 is inapplicable.

4

an unfettered exploration of both the DPW and L.L. Bean forms, including details about the underlying convictions Andrews failed to disclose, would be substantially outweighed by the danger of unfair prejudice to Andrews.  To minimize such prejudice, I will limit Seales' cross-examination as follows.  See United States v. Abel, 469 U.S. 45, 54-55 (1984) (trial judge can take precautions to diminish the prejudice caused by admitting certain evidence); see also United States v. Jackson, 405 F. Supp. 938, 945 (E.D.N.Y. 1975) (the federal rules contemplate "a flexible scheme of discretionary judgments by trial courts").

First, Seales may not disclose the specific crimes of which Andrews has been convicted. The danger of unfair prejudice that would result from the jury learning Andrews has been found guilty of two firearms offenses is significant.  Similarly, I agree with Andrews that testimony regarding his DUI conviction "would be highly prejudicial as it would suggest to the jury that [Andrews] has poor judgment when he consumes alcohol," something Seales is likely to suggest Andrews was doing on the night in question.  Pl.'s Mem. Law Resp. Def.'s Mot. Limine Permit Cross-Examination Pl.'s Prior False Statements at 6, Andrews v. Seales, No. 11-1967 (E.D. Pa. July 25, 2012).  Therefore, Seales may reference Andrews' three prior criminal convictions for misdemeanor charges, without further exploring the nature of those charges.  The fact of the convictions, along with Andrews' previous admission that he was placed on probation and ordered to pay court costs in each case, is sufficient to establish the falsity of Andrews' responses on the applications at issue.

Second, Seales may inquire only about the document Andrews submitted to the DPW. The explanatory language on the L.L. Bean form is arguably confusing regarding what applicants were required to disclose.  See 608(b) Mot. at Ex. 4.  By contrast, the questions on the DPW form are unambiguous.  See id. at Ex. 3, p.5.  Furthermore, Andrews was under no legal

obligation to be truthful on the L.L. Bean form, but was required by state statute to respond truthfully on his application to the DPW.  <u>See</u> 62 Pa. Stat. § 481 (making it a crime to obtain public assistance through a "wilfully false statement or misrepresentation").

Finally, if any possibility of prejudice to Andrews remains despite the limitations on Seales' cross-examination I have outlined above, such danger is outweighed by the probative value of the evidence, and any possibility of juror confusion will be ameliorated by appropriate limiting instructions.  <u>See</u> Fed. R. Evid. 105.

An appropriate order follows.